## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CHARLES H. BOLDEN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 08-1012 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 94 |
| | : | | |
| HILLARY CLINTON, in her official | : | | |
| capacity as United States Secretary | : | | |
| of State, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The plaintiff, a former employee of the Department of State, alleges that he was the victim of unlawful discrimination and retaliation on the basis of his race and age. He brings suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, against Hillary Clinton in her official capacity as the Secretary of State. This matter now comes before the court on the defendant's motion for summary judgment. The defendant argues that its employment decisions were uniformly motivated by legitimate, non-discriminatory reasons. Because the court concludes that no reasonable juror could conclude that these reasons were simply pretext for unlawful discrimination, the court grants the defendant's motion.

## II. FACTUAL & PROCEDURAL BACKGROUND

The plaintiff is a former member of the Foreign Service, the diplomatic corps of the United States. Def.'s Stmt. of Material Facts ¶ 1. As a member of the Foreign Service, the

plaintiff was employed by the defendant, the Department of State.  *Id.*  The plaintiff is an

African-American who was born in 1953.  *Id.*

The plaintiff began his employment with the defendant in 1986 with an assignment to the

Foreign Service's Dallas Regional Office.  *Id.*  From 1990 to 1992, the plaintiff was assigned to

the United States Embassy in Mexico City, Mexico.  *Id.* ¶ 4.  From 1992 to 2004, the plaintiff

served in various positions in different geographical areas within the United States.  *Id.*

When making decisions regarding which employees to promote, the Department of State

convokes a Foreign Service Selection Board ("Promotion Board").  *Id.* ¶¶ 6-7.  These Promotion

Boards are composed of a group of individuals who rank the employees according to

performance reviews, capability, and other metrics.  Def.'s Mot. at 19-20.  The information

reviewed by the Promotion Boards did not contain any information with respect to any

employee's age, race, color, religion, sexual orientation, national origin, disability or prior

activity with the Equal Employment Opportunity Commission ("EEO activity").  *Id.* at 22, *see*

*also id.* Ex. 13-16, 18-32.

The plaintiff applied for a promotion in 2004 and 2005.  Def.'s Stmt. of Material Facts

¶¶ 6-7.  The 2004 Promotion Board considered 137 applicants; the Board recommended 56

individuals for promotion, three of whom were African-American and two of whom were over

age 40.  *Id.*  The 2005 Promotion Board considered 169 applicants; the Board recommended two

African-Americans for promotion and 29 employees aged 40 or over.  Def.'s Stmt. of Facts ¶ 6;

Def.'s Mot., Ex. 108.  Neither the 2004 Promotion Board nor the 2005 Promotion Board

recommended the plaintiff for promotion.  Def.'s Stmt. of Facts ¶¶ 6-7.

In 2007, the plaintiff applied for a number of vacancies that had been announced for a

position as Criminal Investigator.  *Id.* ¶¶ 8-10.  The first vacancy announcement pertained to

three geographical vacancies (Dallas, Denver, and Los Angeles).  *Id.* ¶ 8.  The second vacancy

announcement similarly advertised vacancies in several locations.  *Id.* ¶ 9.  The third vacancy

announcement related to an available position in Virginia.  *Id.* ¶ 10.

When selecting the candidate to be hired to fill these vacancies, the defendant convoked

various panels of individuals to review the applicants.  Def.'s Mot. at 8.  These panels reviewed

the applicants in terms of their relevant qualifications.  *Id.*  The individuals who served on these

panels did not have access to information regarding the applicant's race, age or EEO activity.

*Id.*; *see id.*; Ex. 44, 46.  The panels reviewed the applications and ranked the applicants in light

of their qualifications, but the panels did not conduct interviews.  Def.'s Mot. at 8.  Each panel

then issued a recommendation for the individual that they collectively believed to be the most

qualified.  *Id.* at 9.  The plaintiff was not selected for any of these positions.  *Id.*

By 2007, the plaintiff was nearing completion of his job assignment in New Orleans.

Def.'s Stmt. of Facts ¶ 11.  Following the completion of this assignment, the plaintiff faced

mandatory retirement.  *Id.*  According to the defendant's internal regulations, no individual may

serve more than 15 years at the rank that the plaintiff had held.  *Id.*  Because the plaintiff had

held the same rank for 15 years, the plaintiff was scheduled to be mandatorily retired at the end

of September 2007.  *Id.*

Employees facing mandatory retirement may choose to file a grievance.  Def.'s Mot., Ex.

57.  The plaintiff did so approximately one month before his mandatory retirement was set to

take effect.  *Id.*, Ex. 74.  The defendant's internal regulations stipulate that an employee who

files a grievance while facing mandatory retirement is normally granted some form of interim

relief.  *Id.*, Ex. 57.  Interim relief does not restore the employee to his or her previous status;

rather, it puts the employee in a status where no further actions can be taken to force retirement. *Id.*

Thus, if an employee who faces mandatory retirement files a grievance, the mandatory retirement is held in abeyance. *Id.* In addition, the employee is authorized to travel to Washington, D.C. for three days in order to consult with his or her employers. *Id.*

The plaintiff opted to travel to Washington, D.C. *Id.* At this point, the defendant admits that it erred in the plaintiff's favor by deviating from its standard procedures. Instead of granting the plaintiff permission to visit Washington D.C. for three days, the plaintiff was formally assigned to Washington, D.C., for an indefinite period. Def.'s Mot. at 12. In connection with his indefinite assignment to Washington, D.C. during the pendency of his grievance, the plaintiff was provided with travel authorization and allowances in the amount of $28,547.53 to complete his direct transfer from New Orleans, Louisiana, to Washington, D.C.[1] *Id.*, Ex. 79. To ensure that the plaintiff had meaningful work during his time in Washington, D.C., the plaintiff was asked to assist with a staffing shortage in the Criminal Investigations Division. *Id.*, Ex. 93.

The plaintiff settled his grievance with the defendant in January 2008, and as a result, the defendant granted the plaintiff two additional years in which he could apply for a promotion, thereby forestalling his mandatory retirement date. Def.'s Stmt. of Material Facts ¶ 28; Def.'s Mot., Ex. 17. In 2008, the plaintiff was assigned to Monterrey, Mexico. Def.'s Stmt. of Material Facts ¶ 28. In anticipation of the assignment to Monterrey, the plaintiff was asked to report to training in Washington, D.C. Def.'s Mot. at 12-13. During this time, the plaintiff used

---

[1]    These allowances included: (1) travel costs and per diem for a ten-day househunting trip for the plaintiff and his wife; (2) transfer travel costs for travel to Washington, D.C.; (3) per diem for the plaintiff, his wife and his daughter; (4) shipment of baggage and household effects to Washington, D.C.; (5) temporary storage costs; (6) over $13,000 for sixty days' temporary quarters subsistence allowance, and (7) $1,000 for miscellaneous expenses. Def.'s Mot. at 12.

his government credit card for several charges associated with his temporary lodging there.  *Id.*, Ex. 89, 91.  The plaintiff did not timely pay the credit card balances.  *Id*.  As a result, the plaintiff was suspended for 5 days without pay.  *Id.*

In 2008 and 2009, the plaintiff once again applied for a promotion, but the Promotion Boards did not select the plaintiff.  Def.'s Mot. at 13-14.  By September 2010, the plaintiff had not been promoted during the two-year grace period created by the settlement of his grievance. Def.'s Stmt. of Facts ¶ 34; Def.'s Mot., Ex. 10.  Accordingly, the plaintiff was mandatorily retired.  *Id.*

The plaintiff filed suit in June 2008, alleging racial discrimination under Title VII of the Civil Rights Act of 1964 and age discrimination under the Age Discrimination in Employment Act.[2]  *See generally* Compl.  Following discovery, the defendant filed a motion for summary judgment.  *See generally* Def.'s Mot. for Summ. J. ("Def.'s Mot.").  With this motion ripe for adjudication, the court now turns to the relevant legal standards and the parties' arguments.

---

[2]     Although the complaint alleges that the plaintiff was the victim of discrimination on the basis of age, the plaintiff's complaint cites only to Title VII.  *See generally* 4th Am. Compl. This appears to be an error, as Title VII does not provide a cause of action for age discrimination.  *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 466 n.4 (1982).  This is not fatal to the plaintiff's claim, however.  Under the generous standard for notice pleading under Federal Rule of Civil Procedure 8, the court may not dismiss a claim simply because the complaint fails to cite the correct statute. *Rahman v. Johanns*, 501 F. Supp. 2d 8, 17 (D.D.C. 2007).  Accordingly, the court will construe the plaintiff's factual allegations of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*

### III. ANALYSIS

### A.   Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338

6

(D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose

of the summary judgment device, which is to weed out those cases insufficiently meritorious to

warrant the expense of a jury trial."  *Greene*, 164 F.3d at 675.

### B.  The Court Grants the Defendant's Motion for Summary Judgment Regarding the Plaintiff's Claims of Race and Age Discrimination

### 1.  Legal Standard for Race and Age Discrimination

When the defendant in a Title VII or ADEA case presents a legitimate, non-

discriminatory reason for its actions,[3] the district court need resolve only one question to

adjudicate a motion for summary judgment: "Has the employee produced sufficient evidence for

a reasonable jury to find that the employer's asserted non-discriminatory reason was not the

actual reason and that the employer intentionally discriminated against the employee on the basis

of race, color, religion, sex, or national origin?"  *Brady v. Office of the Sergeant at Arms, U.S.*

*House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008).  The court must consider whether

the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the

plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of

discrimination that may be available to the plaintiff.  *Waterhouse v. District of Columbia*, 298

F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C.

Cir. 1998)).  The plaintiff need not present evidence in each of these categories to avoid

---

[3]     In those rare cases in which the defendant fails to present a legitimate, non-discriminatory reason for its actions, the court must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework.  *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (noting that once the defendant presents a legitimate non-discriminatory reason "the *McDonnell Douglas* framework . . . disappears, and the sole remaining issue is discrimination *vel non*") (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802-05 (1973)); *see also Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (explaining that "the prima facie case is a largely unnecessary sideshow").

summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

### 2. The Plaintiff's Non-Promotion Claims

The plaintiff claims that he was discriminated against on the basis of race and age when he was passed over for promotion in 2004, 2005, 2008 and 2009. *See* 4th Am. Compl. ¶¶ 63, 66. The defendant argues that it is entitled to summary judgment on these claims because the defendant's employment decisions were motivated by legitimate, non-discriminatory reasons. Def.'s Mot. at 32. More specifically, the defendant argues that the candidates who were selected for promotion had qualifications that were superior to the plaintiff's. *Id.*

In contrast, the plaintiff maintains that he was wrongfully denied promotion despite his "outstanding merit." Pl.'s Opp'n at 6. In addition, the plaintiff attempts to introduce statistical evidence that tends to show that no African-American individuals with a history of EEO complaints were selected for promotion. *Id.* The plaintiff thus asks the court to infer that the defendant's stated reason for acting is merely a pretext for invidious discrimination.

Because the defendant has presented a legitimate, non-discriminatory reason for its actions, Def.'s Mot. at 32, the plaintiff bears the burden of submitting evidence that could lead a reasonable juror to conclude that the defendant's stated motive is merely a pretext for discrimination, *see Brady*, 520 F.3d at 494. Statistics may be used in Title VII cases to illustrate a history of discrimination or to show that the defendant's professed reasons for acting are merely a subterfuge. *Cook v. Boorstin*, 763 F.2d 1462, 1468 (D.C. Cir. 1985). It is insufficient to merely show that one protected group forms a small percentage of the employer's workforce,

however; the plaintiff must compare the number of minorities hired with the number of minoritiy applicants that were qualified for the position. *See Metrocare v. Wash. Metro. Area Transit Auth.*, 679 F.2d 922, 930 (D.C. Cir. 1982); *see also Anderson v. Group Hospitalization, Inc.*, 820 F.2d 465, 469 (D.C. Cir. 1987) (concluding that "no inference of unlawful racial animus can be drawn from a statistical comparison that fails to account for relevant job qualifications").

The plaintiff here has merely presented general facts that describe the composition of the State Department's workforce. Pl.'s Opp'n at 6. The plaintiff has not paired these facts with relevant comparisons of the applicants' relative qualifications. *See id.* It is well-settled that mere description of the composition of a workforce, without more, does not support an inference of discrimination. *See Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 650 (1989); *Koger v. Reno*, 98 F.3d 631, 639 (D.C. Cir. 1996); *Whitener v. England*, 2006 WL 3755220, at *7 (D.D.C. Dec. 19, 2006). Because statistics that "indicate nothing more than an under-representation [of a protected class]" cannot alone create a triable issue of fact, *Horvath v. Thompson*, 329 F. Supp. 2d 1, 10 (D.D.C. 2003), the plaintiff's evidence is insufficient to avoid summary judgment.

In addition, the plaintiff has not proffered any evidence to suggest that these putative disparities are statistically significant. *See* Pl.'s Opp'n at 6. The plaintiff's failure to establish the statistical significance of his evidence fatally undermines his claim. *See Whitener*, 2006 WL 3755220, at *7. Accordingly, the court grants the defendant's motion for summary judgment on the plaintiff's non-promotion claims.

### 3. The Plaintiff's Non-Selection Claims

The plaintiff alleges that he was the victim of discrimination on the basis of race and age when he was not selected for various positions as a Criminal Investigator.  4th Am. Compl. ¶¶ 63, 66.  The defendant argues that its acts were motivated by a legitimate, non-discriminatory reason.  Def.'s Mot. at 38.  In essence, the defendant argues that the defendant simply chose the most qualified candidates for the position.  *Id.*  The plaintiff counters that he had "far superior credentials and experience" than those individuals who were selected.  Pl.'s Opp'n at 13.  The plaintiff thus concludes that this discrepancy can only be explained by discriminatory animus. *See id.*

Because the defendant has presented a legitimate, non-discriminatory reason for its actions, Def.'s Mot. at 38, the plaintiff bears the burden of proving that this reason is merely pretext, *Brady*, 520 F.3d at 494; *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006).  A plaintiff may demonstrate evidence of pretext by showing a gap between the relative qualifications of the plaintiff and the individual who was selected for promotion.  *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008).  This evidence is only probative, however, if the gap is so "wide and inexplicable" that it inherently gives rise to an inference of discrimination.  *Id.*  In reviewing the plaintiff's allegations, the court is mindful that Title VII is not a statutory invitation for the judiciary to micromanage all personnel decisions.  *See Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (concluding that Title VII does not permit a court to act as a "super-personnel department that reexamines an entity's business decisions"); *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Title VII liability cannot rest solely upon a judge's determination that an employer misjudged the relative qualifications of admittedly qualified candidates.").  Rather, employers must be given the leeway

to make employment decisions as they see fit. *Holcomb v. Powell*, 433 F.3d at 897 (noting that a reasonable juror will usually assume that an employer is better able to make judgment calls regarding the qualifications of their employees).

Here, the plaintiff compares his qualifications to each of the individuals who were hired for the Criminal Investigator positions and each time reaches the conclusion that his qualifications were superior. Pl.'s Opp'n at 13-14. For example, the plaintiff argues that the candidate who was selected for the first Criminal Investigator position had fewer single overseas assignments than the plaintiff. *Id.* at 13. The defendant replies that the individual who was selected had relevant experience, specialized, area-specific knowledge and Spanish-language fluency. *See* Def.'s Mot. at 42.

Similarly, the plaintiff claims that the individual who was chosen for the second Criminal Investigator position held a lower civil service rank at the time of his selection. Pl.'s Opp'n at 14. The defendant replies that the selectee had location-specific experience and significant supervisory duties which the plaintiff lacked. Def.'s Mot. at 41.

The plaintiff summarily asserts that his qualifications were "far superior" to the individual who was selected for the third Criminal Investigator position without describing the differences between the two. Pl.'s Opp'n at 13. The defendant maintains that the individual selected for this post had 12 years of professional experience as a criminal investigator with the Army Reserve, whereas the plaintiff lacked relevant experience as a criminal investigator. Def.'s Mot. at 42.

When comparing the relative qualifications of the plaintiff and the individual who was selected for promotion, the disparity in qualifications must be so aberrant that it gives rise to an inference of invidious discrimination. *Holcomb*, 433 F.3d at 897. If the evidence reveals that the

plaintiff was merely one of several qualified candidates, summary judgment for the defendant is warranted. *Jackson v. Gonzales*, 496 F.3d 703, 707-08 (D.C. Cir. 2007) (affirming grant of summary judgment for the defendant because the plaintiff and the selectee were both qualified for the promotion and there was no evidence that the plaintiff was a "discernibly better" candidate than the selectee); *Smith v. Napolitano*, 626 F. Supp. 2d 81, 93 (D.D.C. 2009) (same). Even when taken in the light most favorable to the plaintiff, the evidence before the court demonstrates at best that the plaintiff was only one of many qualified applicants who applied for the job. *See* Pl.'s Mot. at 13-14.  In each of the circumstances, the defendant has demonstrated that those individuals who were selected had qualifications that were comparable or superior to the plaintiff's. *See* Def.'s Mot. at 41-42.  In addition, the plaintiff submits no additional evidence from which the court could infer that the defendant's statements are a mere cover for discrimination.  The court therefore concludes that the plaintiff's evidence is insufficient to call into doubt the defendant's legitimate, non-discriminatory reason for acting.  Accordingly, the court grants the defendants' motion for summary judgment on the plaintiff's criminal investigator non-promotion claims.

### 4.  The Plaintiff's Reassignment Claims

The plaintiff claims that his transfer to the employer's New Orleans and Washington, D.C. offices was motivated by discrimination on the basis of race and age.  4th Am. Compl. ¶¶ 63, 66.  The defendant argues that its employment decisions were motivated by legitimate, non-discriminatory reasons; namely, the defendant's staffing needs.  Def.'s Mot. at 51.  The plaintiff counters that he was dissatisfied with his job assignments in Washington, D.C. and New Orleans.

Pl.'s Opp'n at 16.  The plaintiff does not submit any evidence of a connection between the defendant's acts and the plaintiff's race or age, however.  *Id.*

Because the defendant has presented a legitimate, non-discriminatory reason for its actions, the plaintiff bears the burden of producing evidence for a reasonable juror to find that this reason is merely a pretext that is unworthy of credence.  *See Brady*, 520 F.3d at 494.  The plaintiff has not put forth any arguments, much less any evidence, to suggest that the defendant's stated reasons are anything but true.  The plaintiff instead argues that he was dissatisfied with his job duties while working in Washington, D.C.  Pl.'s Opp'n at 16.  Job satisfaction aside, the plaintiff bears the burden of showing that discrimination was a factor behind the defendant's acts.  *See Brady*, 520 F.3d at 494.  Because the plaintiff has submitted no evidence to that effect, the court grants the defendant summary judgment on this claim.

### 5.  The Plaintiff's Suspension Claim

The plaintiff claims he was suspended for five days without pay because of the defendant's discriminatory practices.  4th Am. Compl. ¶¶ 63, 66.  The defendant argues that the defendant's decision to suspend the plaintiff was based on the plaintiff's misuse of government-issued credit cards.  Def.'s Mot. at 52.  The defendant maintains that an employer is entitled to sanction an employee for mishandling financial instruments.  *Id.*  The plaintiff counters that he was required to use the government-issued credit cards for lodging charges associated with his temporary detail to Washington, D.C.  Pl.'s Opp'n at 5.  The plaintiff does not explain, however, why he failed to pay the bills in a timely manner.  *See id.*

The misuse of government-issued credit cards is widely accepted to be a legitimate reason to impose disciplinary action.  *See Rountree v. Johanns*, 382 F. Supp. 2d 19, 26-27

(D.D.C. 2005); *Anderson v. Nat'l R.R. Passenger Corp.*, 360 F. Supp. 2d 8 (D.D.C. 2003).  Here, the plaintiff claims that he used the government-issued credit cards to pay for certain costs associated with his move to Washington, D.C. following his transfer there.  Pl.'s Opp'n at 19.  The plaintiff alleges that he was entitled to reimbursement for these costs.  *Id.*  Whether or not reimbursement was warranted, it is undisputed that the plaintiff was delinquent in paying his credit card bills.  *See* Def.'s Mot. at 53; *id.*, Ex. 75.  The defendant has submitted evidence to show that disciplinary action for delinquent payments is routine.  Def.'s Mot. at 53.  More importantly, the plaintiff cites no evidence to support any causal connection between the defendant's acts and the plaintiff's race or age.  *See id.*  Accordingly, the court concludes that the plaintiff has not met his burden to show that race or age played a determining factor in the defendant's decision to suspend him.  *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982).  Accordingly, the court grants the defendant's motion for summary judgment on this claim.

### C. The Court Grants the Defendant's Motion for Summary Judgment on the Plaintiff's Retaliation Claims

#### 1.  Legal Standard for a Retaliation Claim

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse,[4] and (3) there existed a causal connection between the protected activity and the materially adverse action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.

---

[4]   In the retaliation context, the term "adverse action" "encompass[es] a broader sweep of actions than those in a pure discrimination claim."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008).  Thus, "[r]etaliation claims are 'not limited to discriminatory actions that affect the terms and conditions of employment' and may extend to harms that are not workplace-related or employment-related so long as 'a reasonable employee would have found the challenged action materially adverse.'"  *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006)).

53, 67-69 (2006); *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).  The plaintiff's burden is not great: he "need only establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

If the employer successfully presents a legitimate, non-retaliatory reason for its actions, "the presumption raised by the prima facie is rebutted and drops from the case." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal citation omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a largely unnecessary sideshow").  Upon such a showing by the defendant, the district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee on the basis of race, color, religion, sex, or national origin?"  *Brady*, 520 F.3d at 494. In other words, did the plaintiff "show *both* that the reason was false, *and* that . . . [retaliation] was the real reason." *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007) (alterations in original and internal quotations omitted) (quoting *Hicks*, 509 U.S. at 515).  The court must consider whether the jury could "infer [retaliation] from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were [retaliatory] or that the non-[retaliatory] justification was pretextual."  *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)).  The court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case.  *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998) (en banc).

### 2.  The Plaintiff's Non-Promotion Claims

The plaintiff claims that he was passed over for promotion in 2004, 2005, 2008 and 2009

as a form of retaliation for his decision to file a discrimination claim with the EEO.  4th Am.

Compl. ¶ 63.  The defendant argues that the defendant could not have retaliated against the

plaintiff in 2004 because the plaintiff had not yet filed an EEO complaint.  Def.'s Mot. at 29.

With regard to the plaintiff's 2005, 2008 and 2009 claims, the defendant maintains that the

individuals responsible for making promotion decisions had no knowledge of the plaintiff's EEO

activity.  *Id.*

The plaintiff's claim regarding his non-promotion in 2004 has no merit.  The defendant's

employment action preceded the plaintiff's EEO activity; it is therefore impossible to conclude

that the plaintiff's EEO activity motivated the defendant's acts.  *See Lewis v. District of*

*Columbia*, 653 F. Supp. 2d 64, 79 (D.D.C. 2009) (holding that the plaintiff did not make out a

prima facie case of retaliation where the protected activity occurred after the adverse action was

taken); *Marshall v. Potter*, 634 F. Supp. 2d 66, 73 (D.D.C. 2009) (same).

Turning to the plaintiff's 2005, 2008 and 2009 claims, the court notes that the defendant

has submitted several declarations and affidavits to show that the individuals serving on the

Promotion Boards had no access to any information regarding the plaintiff's EEO activity.

Def.'s Mot. at 22, *id.* Ex. 13-16, 18-32.  The plaintiff does not contest this fact.  *See generally*

Pl.'s Opp'n.  If the officials responsible for an allegedly adverse employment action are unaware

of the employee's prior EEO activity, that employee cannot establish a prima facie case of

retaliation.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (noting that alleged

discriminating officials must know of the employee's EEO activity in order for the plaintiff to

sustain a retaliation claim); *Laboy v. O'Neill*, 2002 WL 1050416, at *1 (D.C. Cir. Mar. 13, 2002)

(same).  Accordingly, the court grants summary judgment to the defendant on the plaintiff's

retaliation claims relating to his non-promotion.


### 3.  The Plaintiff's Non-Selection Claims

The plaintiff claims that he was not selected for various Criminal Investigator positions

as a form of retaliation for his EEO activity.  4th Am. Compl. ¶ 63.  The defendant maintains that

the officials who made the hiring decisions regarding these positions had no knowledge of the

plaintiff's EEO activity.  Def.'s Mot. at 8.  More specifically, the defendant argues that all

employment decisions were made by a panel of individuals who reviewed the applications in

light of the required qualifications listed in the vacancy announcement.  *See id.*, Ex. 43, 44, 46.

The defendant maintains that these applications did not contain any information regarding the

applicant's prior EEO activity.  *Id.*, Ex. 48-50.  The plaintiff does not submit any evidence to the

contrary.  *See generally* Pl.'s Opp'n.  As discussed earlier, the plaintiff may not succeed on a

retaliation claim when the official charged with retaliation was unaware of the plaintiff's EEO

activity.  *Breeden*, 532 U.S. at 272; *Laboy v. O'Neill*, 2002 WL 1050416, at *1.  Accordingly,

the court grants summary judgment to the defendant on this claim as well.


### 4.  The Plaintiff's Reduced Job Assignments Claim

The plaintiff claims that the defendant retaliated against him in the fall of 2007 by

significantly reducing his job assignments.  4th Am. Compl. ¶ 63.  The defendant argues that the

plaintiff's reduced job duties reflected the plaintiff's mandatory retirement.  Def.'s Mot. at 46.

In addition, the defendant notes that the plaintiff responded generously to the plaintiff's

discrimination complaint by delaying the plaintiff's imminent retirement, granting the plaintiff a

temporary job assignment and giving the plaintiff several thousand dollars in travel expenses while his claim was investigated.  *Id.*  Accordingly, the defendant argues that its acts cannot be considered "adverse" under the relevant statutes.  *Id.*  The plaintiff argues that his reduced job assignments were "undeniably" acts of retaliation.   Pl.'s Opp'n at 16.

In general, an employment action is considered "adverse" in the retaliation context if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Id.*  Purely subjective injuries, such as dissatisfaction with a reassignment, are not adverse actions.  *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006).  Rather, the plaintiff must demonstrate that she suffered some "objectively tangible harm."  *Id.*  Of particular relevance to this case, a transfer to a new position after an employee's contract expires generally does not constitute an adverse action.  *Gaujac v. EDF, Inc.*, 601 F.3d 565, 578 (D.C. Cir. 2010). This is true even if the plaintiff does not approve of the new position.  *Id.*

Under the rules of the Foreign Service, the defendant faced mandatory retirement on September 30, 2007.  Def.'s Mot. at 10-11.  The defendant maintains that it was standard Foreign Service practice to assign a retiring employee's assignments to another individual.  *Id.* at 11. The plaintiff filed a grievance in August 2007, a month before the mandatory retirement was set to take effect.  *Id.*  The defendant maintains – and the plaintiff does not contest – that an employee who files such a grievance is generally "assigned to separation from the Service with the effective date of the separation action to remain undetermined pending the outcome of the employee's grievance."  *Id.*, Ex. 57.  That employee is then entitled to three days of consultations in Washington, D.C. to manage administrative matters and receive *per diem* payments.  *Id.*  In the present case, the defendant appears to have erred in the plaintiff's favor by assigning the plaintiff to Washington D.C. for an indefinite period.  *Id.* at 11-12.  The plaintiff was assigned to

a "miscellaneous" position, which the defendant ordinarily uses to bridge gaps in assignments and training. *Id.* at 12.

The defendant has submitted declarations of witnesses that tend to show that the defendant was asked to assist with a staffing shortage in the Criminal Investigations Division with the Office of Investigations and Counterintelligence. *Id.* at 48; Def.'s Reply at 7. The plaintiff does not controvert this evidence. *See* Pl.'s Mot at 15-16. In addition, the plaintiff does not controvert the fact that he was given an indefinite extension with pay and travel expenses to Washington, D.C., when the ordinary regulations in place would have required his immediate retirement. Def.'s Mot. at 12.

Although the plaintiff may have been displeased with his interim assignment in Washington, D.C., this is not a genuine dispute of *material* fact. *See Holcomb v. Powell*, 433 F.3d at 902. The relevant question for the purposes of the plaintiff's claim is whether the defendant's actions would dissuade an employee from making claims of discrimination. *Baird*, 662 F.3d at 1249. Here the facts are uncontroverted: the plaintiff received an extension of his employment tenure and several thousand dollars in travel expenses when the defendant's internal regulations called for his immediate retirement. The court cannot conclude, as the plaintiff suggests, that these benefits would "dissuade" an employee from making a claim of discrimination. *Gaujac v. EDF, Inc.*, 601 F.3d at 578. Accordingly, the court concludes that no reasonable juror could find that this favorable treatment was a form of retaliation. The court therefore grants the defendant's motion for summary judgment as to this claim.

19

### 6.  The Plaintiff's Suspension Claim

The plaintiff claims that he was retaliated against in January 2008 when he was suspended without pay for failing to pay the balance on a government-issued credit card.  Pl.'s Opp'n at 15, 16.  The defendant argues that the plaintiff was suspended for failing to pay the bills associated with a government-issued credit card.  Def.'s Mot. at 52.  The defendant argues the officials who suspended the plaintiff had no access to or knowledge of the plaintiff's EEO records.  *Id.*, Ex. 75, 76.  More specifically, the defendant maintains that the section of the Department of State that is tasked with disciplining employees for these infractions is separate from that part of the agency that has access to the Plaintiff's EEO activity.  *Id.*

The plaintiff counters that he was entitled to reimbursement for the charges he put on the credit card.  Pl.'s Opp'n at 15.  The plaintiff does not controvert, however, the fact that the plaintiff was delinquent in paying his credit card bills.  *Id.*  In addition, the plaintiff submits no evidence to suggest that the official who ordered his suspension had any access to his EEO records.  *See id.*  Because the plaintiff has proffered no evidence to suggest that the official who ordered his suspension was aware of his EEO activity, the court concludes that no reasonable juror could determine that the defendant's stated reason for suspending the plaintiff is merely pretext.  *Cuddy v. Carmen*, 694 F.2d at 856-57 (concluding that a plaintiff's retaliation claim cannot stand if there is no evidence that the defendant was aware of the plaintiff's EEO activity).  Accordingly, the court grants the defendant's motion for summary judgment.

### IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 9th day of March, 2012.

RICARDO M. URBINA
United States District Judge
